UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RODOLFO RIVAS, | No. 2:16-CV-2904 KJM AC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| SCOTT KERNAN, Warden, | |
| Respondent. | |

Petitioner is a California state prisoner proceeding through counsel on an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on a petition which challenges petitioner's 2012 conviction for aggravated mayhem, second degree robbery, assault with a deadly weapon, and participation in a criminal street gang. ECF No. 1. Respondent has answered, ECF No. 10, and petitioner has filed a traverse, ECF No. 18.

BACKGROUND

I. Proceedings in the Trial Court

A. Preliminary Proceedings

Petitioner and several others were charged in Yolo County Superior Court with multiple counts arising from a 2009 attack on members of a rival gang. In 2011, petitioner and three co-defendants went to trial on the charges. The jury convicted one defendant of various charges and acquitted two other defendants. However, the jury was unable to reach a verdict as to petitioner Rivas, and the court declared a mistrial.

1

Petitioner was retried in 2012, together with co-defendant Valadez.

B. The Evidence Presented at Trial

1. Prosecution Case

The jury heard evidence of the following facts.[1] Early in the morning on September 20, 2009, Osvaldo Hernandez drove his friend Victor Arechiga to a gas station with a convenience store to purchase beer. He parked near the front of the store, and Arechiga went in to make the purchase. Arechiga left the store with two 30 packs of beer and may have said something to a couple of girls as he passed by them.

As Arechiga put the beer in the backseat of Hernandez's car, a group of Norteño gang members rushed the car. One of the men yelled, "Are you a scrap?," using a disrespectful term for Sureños, and someone took the beer from the backseat. Meanwhile, the men began punching and kicking Hernandez as he sat in the driver's seat. Hernandez was not able to get out of the car because one of the men pushed against the driver's door. As Hernandez was being blocked from getting out of the car through the driver's door, someone entered the vehicle through the passenger side door and slashed Hernandez's cheek with a sharp object. It looked like his face was "split in half." After the slashing, the group of men fled.

Jennifer Hernandez, who is not related to Osvaldo Hernandez, was at the gas station when the attack took place. She saw a group of young men who were rambunctious and cocky, and she saw four or five men attacking the car that Hernandez was in. She identified petitioner as one of the men in the group.

Woodland Police Department detectives retrieved a surveillance video showing the attack at the gas station. In the video, which is grainy and pixelated, Arechiga is seen putting the beer in the backseat of the car, while Hernandez waits in the driver's seat. At least four men approach the car, chase off Arechiga, grab the beer from the backseat, punch and kick Hernandez, and flee. One man is seen pushing the driver's door shut, with his hand on the driver's side window, to

---

[1] The following summary is adapted from the opinion of the California Court of Appeal, Lodged Doc. 24, pp. 3-4; People v. Rivas, 238 Cal. App. 4th 967, 970-971 (2015). The undersigned has independently reviewed the trial transcripts, Lodged Docs. 8-15, and finds this summary to be accurate.

keep Hernandez in the car. Another man is seen entering the front seat through the passenger's side and making a motion toward Hernandez with his right hand.

Based on a tip from an anonymous caller, the detectives contacted Rivas's probation officer, Mike Ha, and had him watch the video to see if he could identify anyone. After watching the video several times, Probation Officer Ha was able to identify Rivas and another man in the video.

Osvaldo Hernandez identified Rivas at trial as the one who slashed his face.

Two days after the attack on Hernandez, a community service officer with the Woodland Police Department identified six latent fingerprints on Hernandez's car, including a print from the outside of the driver's side window. Forensics analysts matched the palm print to that of petitioner's co-defendant Valadez.

Both Rivas and Valadez are Norteño criminal street gang members. The prosecution gang expert opined that the attack was for the benefit of the gang, and that the type of slashing inflicted on Hernandez was a gang signature or "advertisement."

2. Defense Case

Petitioner's mother, Evangalina Rivas, testified that on the night of the incident petitioner celebrated his 21st birthday at home with the family. He went to bed at 10 p.m. and was still there in the morning. Ms. Rivas did not hear anyone leave the house in the night.

Mark Harrison testified as an expert in police practices. He testified that distinctive facial slashings like that inflicted on Hernandez are called "bitch slashes" and occur in prison settings. Such an assault would be unusual on the streets. The victim of a "bitch slash" is held in position to be cut. In dynamic situations where two people are moving, the cuts are opportunistic wounds.

Geoffrey Loftus, Ph.D., testified as an expert in memory and perception. He testified about the fallibility of eyewitness identification generally, and video identification in particular.

C. Outcome

The jury found both petitioner and Valadez guilty of aggravated mayhem (Cal. Pen. Code, § 205), assault by means of force likely to produce great bodily injury (Cal. Pen. Code, § 245(a)(1)), and active participation in a criminal street gang (Cal. Pen. Code, § 186.22(a)). The

1 jury found true allegations that petitioner personally used a deadly weapon (Cal. Pen. Code, §
2 12022(b)(1)) and personally inflicted great bodily injury (Cal. Pen. Code, § 12022.7(a)), and that
3 both defendants committed crimes on behalf of a criminal street gang (Cal. Pen. Code, §
4 186.22(b)(1)).  The jury also convicted petitioner of robbery (Cal. Pen. Code, § 211); it did not
5 reach a verdict as to Valadez on that count.  3 CT 835-838.[2]

Petitioner was sentenced to an aggregate determinate term of 17 years and a consecutive indeterminate term of 15 years to life.  4 CT 1029-1032.

II.     Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on July 20, 2015.  Lodged Doc. 24.  The California Supreme Court denied review on November 10, 2015.  Lodged Doc. 26.

Petitioner did not seek collateral relief in the state courts.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99 (2011).  State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

---

[2] "CT" refers to the Clerk's Transcript on Appeal, Volumes 1 through 4 (Lodged Docs. 1-4). The state court record also includes a Supplemental CT (Lodged Doc. 5), and Augmented CT in two volumes (Lodged Docs. 6 and 7).

489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 563 U.S. at 102.

## DISCUSSION

I.   Claims One Through Three: Ineffective Assistance of Counsel

   A.   Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that his trial lawyer performed deficiently in three ways. First, counsel failed to preclude testimony regarding petitioner's prior conviction for spousal abuse. Probation Officer Ha testified that he supervised a domestic violence and anger management caseload, and was supervising petitioner at the time of the assault. On cross-examination, defense counsel asked how petitioner had been doing on supervision. Ha answered that petitioner had been doing well, and was participating in a batterer's intervention program and testing clean for drugs and alcohol. See 6 RT 1504-1505, 1527-1528.[3]

Second, counsel failed to preclude testimony regarding hearsay statements made by an anonymous caller. An anonymous tip had first brought petitioner to the attention of the Woodland police detectives who were investigating the attack on Hernandez. Because of the tip they contacted petitioner's probation officer, who subsequently identified petitioner on surveillance video. The fact that there had been a tip implicating petitioner, but no details about the call, was revealed to the jury in the course of the detectives' testimony regarding their reason for contacting the probation officer to view the video. Detective Cordova mentioned the tip on cross-examination by defense counsel. 5 RT 1406. Detective Flores mentioned it on direct examination, and a defense objection was sustained. 6 RT 1699. When called in to view the surveillance video, the probation officer was not told by detectives that petitioner had been named in the tip nor was he told who to look for in the video.

Third, petitioner alleges that counsel prejudicially erred by eliciting testimony regarding petitioner's invocation of his Miranda rights and refusal to give a statement to officers. The following exchange occurred during cross-examination of Detective Cordova:

   Q. One final question. Did you personally interview Jose Rivas?

---

[3] "RT" refers to the Reporter's Transcript on Appeal, Volumes 1-8 (Lodged Docs. 8-15). The state court record also includes a Supplemental RT (Lodged Doc. 16), and 4 volumes of Augmented RT (Lodged Docs. 17-20.)

|   |   |
|---|---|
| 1 | A. Yes. |
| 2 | Q. Okay. Was there anybody else present when you interviewed Jose Rivas? |
| 3 | A. I don't think so. It was very short. |
| 4 | Q. Now, you were directing – again, supervising, I understand, but was there a conversation about – between you and Officer Flores concerning following up on the information that was derived from the interview with Jose Rivas? |
| 5 | |
| 6 | |
| 7 | A. He invoked for an attorney, so I don't think there was any information that we got from him. |
| 8 | |
| 9 | Q. Isn't it true that Mr. Rivas advised you and Officer Flores that he had been home at the time? |
| 10 | [Prosecutor]: Objection, your Honor. |
| 11 | THE COURT: Sustained. |
| 12 | [Counsel for defendant Rivas]: Your Honor, this isn't for the truth. I'm simply trying to find out what procedures were followed and why they were followed in the investigation. |
| 13 | |
| 14 | THE COURT: I'd sustain the objection as to that specific question. |
| 15 | Q. Isn't it true that Mr. Rivas provided you with information as to his whereabouts at the time of the incident? |
| 16 | |
| 17 | A. I don't recall him doing anything other than invoking his Miranda. I remember it was very short. |

5 RT 1412-1413.

### B. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland Washington, 466 U.S. 668, 692, 694 (1984). The proper measure of attorney performance is objective reasonableness under prevailing professional norms. Id. at 688. Prejudice means that the error actually had an adverse effect on the defense and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-694.

////

C.  The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The state appellate court ruled in pertinent part as follows:

> [*Anonymous tip*]
>
> On appeal, defendant Rivas contends that eliciting the information about the anonymous tip constituted ineffective assistance of counsel because the testimony "plant[ed] in the jurors' minds that there was someone with special knowledge of the circumstances of the assault. . . who was potentially at risk by making a public disclosure of the information, thus giving credence to the accusation." The contention is without merit because counsel may have had a rational tactical purpose for eliciting the testimony.
>
> Defendant Rivas's main defense was that he was not present during the assault. Part of this defense was to challenge Probation Officer Ha's identification of defendant Rivas in the surveillance video. Eliciting the testimony about the anonymous tip and the detectives' focus on defendant Rivas when asking Probation Officer Ha to view the video could have been intended to raise a doubt in the jurors' minds about whether the detectives, before showing the video, may have communicated to Probation Officer Ha something that led him to believe he was looking for defendant Rivas, or even just one of his probationers, thus calling into question the reliability of the identification.
>
> In any event, it is not reasonably probable that defendant Rivas would have obtained a more favorable result if Detective Cordova has not testified concerning the anonymous tip. The comment was brief. And not only Probation Officer Ha but also Jennifer Hernandez (a completely disinterested witness) and the victim, Osvaldo Hernandez, identified defendant Rivas.
>
> […]
>
> [*Prior conviction*]
>
> . . . Rivas asserts that counsel should have objected to testimony about defendant Rivas's prior conviction and should not have elicited testimony that he had been participating in a batterer's intervention program. According to defendant Rivas, this constituted ineffective assistance of counsel. We disagree. Counsel may have had a rational tactical purpose for eliciting the testimony. That defendant Rivas was on probation was relevant and admissible because that led to identification by Probation Officer Ha from the surveillance video. Allowing the jury to learn that the prior

8

conviction was for domestic violence (not gang violence) and defendant Rivas was performing well on probation in the programs relevant to that prior conviction could prevent the jury from speculating about the prior conviction. It also allowed counsel to cast defendant Rivas in the favorable light of turning his life around.

In any event, it is not reasonably probable that defendant Rivas would have obtained a more favorable result if counsel had objected to the evidence concerning the prior conviction and had not elicited information about how defendant was performing in the programs. The prosecutor did not argue that defendant Rivas's prior conviction was evidence of any character-based propensity to commit the crimes in this case. And the evidence of defendant Rivas's participation in the assault was strong.

[…]

[*Invocation of Miranda Rights*]

Citing *Doyle v. Ohio* (1976) 426 U.S. 610 [49 L.Ed.2d 91 [*Doyle*], which bars use of a defendant's invocation of his right to remain silent as evidence against him, defendant Rivas contends that his attorney's failure to have his invocation of his right to remain silent excluded from evidence constituted ineffective assistance of counsel. The contention is without merit because (1) *Doyle* prohibits prosecutorial use of a defendant's invocation of his right to remain silent, not a defendant's use of the invocation, and (2) there was no prejudice.

"The basis of the [*Doyle*] rule is that 'it is fundamentally unfair, and a deprivation of due process, to promise an arrested person that his silence will not be used agaisnt him, and then to breach that promise by using silence to impeach his trial testimony.' [Citation.]" (*People v. Clark* (2011) 52 Cal.4th 856, 959.)

The prosecution did not use defendant's silence as evidence against him. Under these circumstances, there is no violation of *Doyle*. (*People v. Hollinquest* (2010) 190 Cal. App.4th 1534, 1555-1556.) There is no prohibition on the defense eliciting and using evidence that the defendant invoked his right to remain silent.

Defendant Rivas does not state clearly how this testimony was prejudicial to him. He notes that *Doyle* error violates a defendant's right to remain silent because ot "turn[s] the invocation of the right into a suggestion of guilty." However, as mentioned, there was no *Doyle* error here, and the prosecution did not argue that defendant Rivas's invocation of his right to remain silent suggested guilt.

In closing argument, the prosecutor said: "[Counsel for defendant Rivas] also criticized the police for never checking out Mr. Rivas' statement to them, but there's no evidence in front of you that Mr. Rivas ever told the police what he did." This was not prosecutorial use of defendant Rivas's invocation of his right to remain silent. Instead, it was merely a comment refuting the assertion made by

> counsel for defendant Rivas that he had made a statement to police.
>
> Only speculation supports an argument that the jury actually used defendant Rivas's invocation of his right to remain silent as evidence against him. Therefore, it is not reasonably probable that defendant Rivas would have obtained a more favorable result if the evidence had been excluded.

Lodged Doc. 24 at 28-33.

### D. Objective Reasonableness Under § 2254(d)

The state appellate court found no deficient performance by defense counsel, postulating legitimate reasons that counsel may have had for each challenged action. The undersigned is wary of judges (state or federal) imagining justifications for the acts and omissions of defense counsel in the absences of evidence of counsel's intent. However, Strickland itself establishes a "strong presumption that counsel exercised acceptable professional judgment in all significant decisions made." 466 U.S. at 689. On the facts and circumstances of this case, it was entirely reasonable for the state court to follow that presumption and to provide illustrations.

Moreover, the state court permissibly found that the ineffective assistance claims independently fail for lack of prejudice. Three trial witnesses identified petitioner as a participant in the attack. One of them, the slashing victim, identified petitioner as his assailant. In the face of this evidence, there is no reasonable likelihood that the jury would have reached a different decision had counsel acted as petitioner now urges. And in the absence of prejudice, the state court was compelled to deny the claims even if there had been deficient performance. See Strickland, 466 U.S. at 689.

As to the issue regarding petitioner's invocation of his right to silence, neither Strickland nor Doyle v. Ohio, 426 U.S. 610 (1976) was unreasonably applied. The state court was quite correct that Doyle limits only the prosecution. Even if defense counsel had not had a presumptively reasonable strategic basis for his question—and here counsel explained that he was trying to get at police failure to follow up on petitioner's alibi—there can be no ineffective assistance of counsel absent prejudice. Strickland, 466 U.S. at 689. Given the identification of petitioner as the knife-wielding assailant, the state court's finding of no prejudice cannot be

disturbed under § 2254(d) standards.[4]

Even without reference to § 2254, petitioner's ineffective assistance claims would fail. None of the alleged attorney errors are sufficient to overcome the presumption of reasonable strategy that Strickland requires. And in light of the evidence as a whole—especially the victim's identification of petitioner as the person who slashed him with the knife—it is not reasonably probable that there would have been a different result had counsel prevented the jury from learning about petitioner's prior conviction, the existence of an anonymous tip, and petitioner's invocation of his Miranda rights. All were brief references without prejudicial effect.

## II. Claim Four: Insufficient Evidence

### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that his conviction on the aggravated mayhem count is insufficiently supported by the evidence presented to the jury. At trial, a Woodland police detective testified for the prosecution as an expert on criminal street gangs and explained among other things that the type of injury inflicted on Hernandez, leaving an obvious scar, was done as an "advertisement" for the Norteños. The defense gang expert testified that the type of wound inflicted on Hernandez is called a "bitch slash" in prison, where it is typically inflicted on an inmate being held down by other inmates; he had never seen such a wounding outside the prison context. In light of the defense expert testimony, petitioner contends that the evidence as a whole was insufficient to support a mayhem conviction, which requires proof of intent to permanently disable or disfigure.

////

////

---

[4] The undersigned notes that the final paragraph of the state court's analysis might be read to suggest that Strickland requires an historical inquiry into whether the particular jury at petitioner's trial was influenced by alleged attorney error. See Lodged Doc. 24 at 33 ("Only speculation supports an argument that the jury actually used defendant Rivas's invocation of his right to remain silent as evidence against him. . . ."). The Strickland prejudice inquiry is a strictly objective one. See Strickland, 466 U.S. at 695. However even if the state court's language could fairly be construed as reflecting a standard contrary to or unreasonable under Strickland, the claim would fail for lack of prejudice without regard to § 2254(d) standards.

11

B. <u>The Clearly Established Federal Law</u>

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt. <u>United States v. Winship</u>, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1974). If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." <u>Id.</u> at 326. "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011).

C. <u>The State Court's Ruling</u>

This claim was exhausted on appeal, and the last reasoned state court decision is the opinion of the Court of Appeals. That opinion is therefore the subject of review under § 2254(d). <u>Ortiz</u>, 704 F.3d at 1034.

The appellate court ruled in pertinent part as follows:

> Relying on asserted uncertainties and contradictions in the evidence and construing the evidence in a way to favor him, defendant Rivas contends that the evidence was insufficient to convict him of aggravated mayhem because it showed an opportunistic wounding of Hernandez rather than a focused slicing of the face with specific intent. However, construing the evidence properly on appeal, we conclude it established an intentional and permanent disfigurement of Hernandez.
>
> […]
>
> The trial court instructed the jury on the elements of aggravated mayhem:
>
> "To prove that the defendant is guilty of [aggravated mayhem (Pen. Code § 205)], the People must prove that:
>
> "1. The defendant unlawfully and maliciously disabled or disfigures someone permanently;
>
> "2. When the defendant acted, he intended to permanently disable or disfigure the other person

"AND

"3. Under the circumstances, the defendant's act showed extreme indifference to the physical or psychological well-being of the other person. (CALCRIM No. 800.)

In making his argument that the evidence was not sufficient to establish aggravated mayhem, defendant Rivas relies heavily on *People v. Lee* (1990) 220 Cal.App.3d 320, 325, which held:

"Evidence which shown no more than an 'indiscriminate attack' on the body of the victim is insufficient to prove the specific intent to cause mayhem under [Penal Code] section 203 [the mayhem statute]. In addition, the specific intent cannot be inferred solely from evidence that the injury inflicted constitutes mayhem; instead, there must be other facts and circumstances which give rise to an inference of intent to maim rather than attack indiscriminately. (*People v. Ferrell* [(1990] 218 Cal.App.3d [828,] 835.)" *People v. Lee, supra,* 220 Cal.App.3d at p. 325.

Defendant Rivas claims this was nothing more than an indiscriminate attack because (1) his expert testified that "bitch slash" attacks are unlikely to occur on the streets, (2) such attacks are committed while other gang members restrain the victim, and (3) this was merely a "swarming, rat-pack assault, with some gang members kicking and punching from one side, while another attacked with a knife from the other. . . ."

To the contrary, the evidence showed that, even if the other gang members did not hold Hernandez down, they confined him to his car so that defendant Rivas would have access to him. The distinctive way in which Hernandez was cut is indicative of the "bitch slash" inflicted by gang members on their victims, so the jury reasonably inferred that defendant Rivas, a gang member acting with his gang, meant to inflict the specific, disfiguring injury. The defendant Rivas's expert had only seen that type of attack in prison and not on the streets goes only to the weight of the evidence, and the jury reasonably concluded that the specific injury is what defendant Rivas intended to inflict.

Attempting to characterize the assault as an indiscriminate attack on Hernandez is nothing more than an attempt to construe the evidence in Rivas's favor. While the gang members certainly swarmed the car and stole the beer, the jury reasonably inferred that the infliction of injury on Hernandez was a focused attack to intentionally disfigure him.

The evidence of aggravated mayhem was sufficient to convict defendant Rivas.

Lodged Doc. 24 at 23-25.

D. Objective Reasonableness Under § 2254(d)

The Court of Appeal did not unreasonably apply the standards announced in Jackson v.

13

1 Virginia, supra. Indeed, the state appellate court was obliged to draw all permissible inferences
2 from the evidence in favor of the prosecution. Jackson, 443 U.S. at 319, 326. It was not
3 unreasonable of the appellate court to characterize petitioner's argument as one that inverts this
4 rule. Petitioner disagrees with the jury's evaluation of the evidence, but this is far from a case in
5 which "no rational trier of fact could have agreed with the jury." Cavazos, 565 U.S. at 2.
6 Particularly in light of the "double dose of deference" to the verdict that is required under the Due
7 Process Clause and the AEDPA, Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011), federal
8 habeas relief is unavailable.

9 Moreover, to the extent that the state court's ruling turned on questions of California law,
10 including the construction of the criminal mayhem statute, its decision is unreviewable here. See
11 Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (federal habeas court is bound by state court's
12 interpretation of state law).

### III. Claim Five: Sentencing Error

#### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner was sentenced to consecutive terms for the robbery and mayhem counts. Petitioner contends that this was error, because the two counts were based on the same conduct.

#### B. The Clearly Established Federal Law

The decision to impose consecutive sentences for multiple counts rests with the sentencing judge, and specification of the regime for administering multiple sentences is the prerogative of state legislatures. Oregon v. Ice, 555 U.S. 160, 168 (2009). Errors related to the application of state law do not support federal habeas relief. Lewis v. Jeffers, 497 U.S. 764, 780 (1990). A state sentencing error violates a defendant's federal constitutional rights, and supports habeas relief, only where the error is "so arbitrary or capricious as to constitute an independent due process violation." Richmond v. Lewis, 506 U.S. 40, 50 (1992).

#### C. The State Court's Ruling

This claim was exhausted on appeal. The state court affirmed the sentence, resting its decision exclusively on application of California Penal Code section 654. Lodged Doc. 24 at 33-35.

### D. Objective Unreasonableness Under § 2254(d)

The Ninth Circuit has specifically held that habeas relief is unavailable for an alleged violation of Cal. Penal Code § 654. Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989). The Ninth Circuit has also held more generally that "the decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). Petitioner concedes as much. See ECF No. 18 (traverse) at 42 (acknowledging that propriety of the sentence "is a matter not reachable on a writ under 28 U.S.C. § 2254.").

Accordingly, this claim must be denied.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights. Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 15, 2021

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE